21CA0546 Peo in Interest of EM 12-09-2021 COLORADO COURT OF APPEALS Court of Appeals No. 21CA0546 Fremont County District Court No. 19JV58 Honorable Lynette M. Wenner, Judge The People of the State of Colorado, Appellee, In the Interest of E.M., a Child, and Concerning P.C., Appellant. JUDGMENT AFFIRMED Division V Opinion by JUDGE HARRIS Richman and Gomez, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced December 9, 2021 Brenda L. Jackson, County Attorney, Nicole L. Bartell, Assistant County Attorney, Cañon City, Colorado, for Appellee Jenna L. Mazzucca, Guardian Ad Litem Lindsey Parlin, Office of Respondent Parents’ Counsel, Ewa Beach, Hawaii , for Appellant P.C. 
1 ¶ 1 In this dependency and neglect case, P.C. (father) appeals the juvenile court’s judgment terminating his parent-child legal relationship with E.M. (the child). Father, who was incarcerated at the time of the termination hearing, contends that the juvenile court violated his procedural due process rights by proceeding with the termination hearing in his absence. According to father, the juvenile court should have continued the hearing so that he could have appeared by Webex. We disagree and, therefore, affirm. I. Relevant Facts ¶ 2 In July 2019, the Fremont County Department of Human Services filed a petition in dependency and neglect concerning the then four-month-old child (and her siblings, who are not part of this appeal). The child was adjudicated dependent and neglected as to father by default in October 2019, and, shortly thereafter, the court adopted a treatment plan for him. In June 2020, the Department filed a motion to terminate father’s parental rights. ¶ 3 A hearing on the termination motion was initially scheduled for October 27, 2020. At the child’s mother’s request, the court reset the hearing to December 2020. 
2 ¶ 4 Father was incarcerated in the Pueblo County jail at the time of the December hearing. Due to father’s absence, the juvenile court bifurcated father’s termination hearing from the child’s mother’s hearing and continued father’s portion until January 2021. The court granted father’s counsel’s application for a writ of habeas corpus ad testificandum for father so that he could appear at the January 2021 hearing via Webex. ¶ 5 Just before the January hearing, the juvenile court granted the Department’s unopposed motion for a continuance and reset the hearing to February 17, 2021. The court also granted father’s counsel’s new application for a writ for father to appear at the February hearing by Webex from the jail. ¶ 6 However, shortly before the hearing date, the court and counsel learned that father was scheduled to be transferred from the jail back to the Department of Corrections (DOC) on February 16. The guardian ad litem (GAL) filed a motion requesting that the juvenile court hold the termination hearing in father’s absence to prevent further delay in the proceedings. The GAL’s motion noted that father had been incarcerated since “at least February of 2020” and had not had parenting time with the child since November 4, 
3 2019. Father’s counsel objected to proceeding in father’s absence, arguing that father had a due process right to appear. He advised the court that “while DOC is cooperative in allowing inmates to appear by WebEx, they require two weeks’ notice,” and he requested a continuance “until such time as Respondent Father can appear by WebEx.” ¶ 7 The juvenile court granted the GAL’s motion, and the hearing began on February 17 without father present. But the hearing was not completed on February 17, so the court scheduled additional hearing time on March 3, 2021, two weeks later. ¶ 8 At the March 3 hearing, father’s counsel objected to proceeding without father. He explained that father was “in Centennial” and could be available “within a reasonable amount of time.” He told the court that “DOC requires 2 weeks without a writ.” The juvenile court overruled the objection, noting that in the two weeks since the last hearing, no “attempts were made to get [father] here today[;] [n]o writs were issued or requested.” ¶ 9 After the hearing, the court granted the motion to terminate father’s parent-child legal relationship with the child. 
4 II. Discussion ¶ 10 Father contends that his due process rights were violated when the juvenile court proceeded in his absence rather than granting his motion to continue the termination hearing so that he could appear by Webex. He says that the court’s decisions deprived him of “an opportunity to participate in the termination hearing and present evidence.” We discern no basis for reversal. ¶ 11 In a proceeding to terminate the parent-child legal relationship, due process requires that the parent be given notice of the termination proceedings, an opportunity to be heard or defend, and the assistance of legal counsel. People in Interest of V.M.R., 768 P.2d 1268, 1270 (Colo. App. 1989); see also A.M. v. A.C., 2013 CO
16, ¶ 29 (listing additional procedural protections provided to parents at a terminating hearing). Because dependency and neglect proceedings are civil in nature, neither due process nor other constitutional guarantees require a parent’s presence at a termination hearing. People in Interest of C.G., 885 P.2d 355, 357 (Colo. App. 1994). ¶ 12 Here, the record shows that father received notice of the termination proceedings, he was represented by counsel throughout 
5 the case, and counsel was present at the termination hearing and able to participate on his behalf. ¶ 13 Most importantly, the juvenile court did not deny any request by father to appear by Webex. To the contrary, the court granted each request for a writ submitted by father’s counsel. The date on which father could have testified was March 3, 2021. But father’s counsel did not ask the court to issue a writ to secure father’s attendance on that date nor did he otherwise attempt to arrange for father’s presence at the hearing by video or telephone. Under these circumstances, we cannot conclude that the juvenile court violated father’s due process rights. ¶ 14 Nor are we persuaded that the court abused its discretion by denying father’s request, made at the March 3 hearin g, for a continuance of the remainder of the termination hearing. ¶ 15 When ruling on a motion to continue, the juvenile court should balance the need for orderly and expeditious administration of justice against the facts underlying the motion and the child’s need for permanency. C.S. v. People in Interest of I.S., 83 P.3d 627, 638 (Colo. 2004); see also CJD 96-09(4) (“Continuances will be 
6 granted by a Judicial Officer only upon a finding that a manifest injustice would occur in the absence of a continuance.”). ¶ 16 Where, as here, expedited permanency procedures apply, the court shall not grant a continuance unless good cause is shown, and the court finds that the child’s best interests will be served by a continuance. §§ 19-3-104, 19-3-508(3)(a), 19-3-602(1), C.R.S. 2021. ¶ 17 The court determined that it was not in the child’s best interest to continue the hearing again. In making that determination, the court considered legally appropriate factors, all of which find support in the record: the history of delay in the case, father’s lack of participation throughout the case, and the child’s need for permanency. ¶ 18 In the juvenile court, father did not explain why continuing the termination hearing would be in the child’s best interests. (He does not offer any explanation on appeal either.) At the time of the termination hearing, the child had been in an adoptive foster placement for most of her life. The caseworker testified that the child needed permanency as soon as possible and that remaining with her current placement was in her best interests. 
7 ¶ 19 In any event, father has failed to allege, much less show, any prejudice from the court’s denial of his request for a continuance. See Interest of Spohr, 2019 COA 171, ¶ 32 (To be entitled to relief, the “moving party must show that the denial of the continuance resulted in actual prejudice.”). He did not make an offer of proof in the juvenile court, see CRE 103(a)(2), and does not explain on appeal what he would have testified about or how his testimony (or other participation) would have affected the outcome of the proceeding. ¶ 20 The record shows that at the time of the termination hearing, father had seen the child only a couple of times and had not had any contact with her since early November 2019, when she was eight months old. He had failed to engage in services and had mostly been incarcerated during the pendency of the case. Father does not dispute the juvenile court’s findings that he had failed to comply with his treatment plan, was unfit, and was unlikely to become fit within a reasonable time. Accordingly, we discern no basis to reverse the court’s termination order. III. Conclusion ¶ 21 The judgment is affirmed. 
8 JUDGE RICHMAN and JUDGE GOMEZ concur.